UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

SYLVAIN GNALI GNAHORE, and
FALIKOU KONE,

Defendants.

S4 19 Cr. 808 (VEC)

**GOVERNMENT'S OPPOSITION TO DEFENDANT FALIKOU KONE'S
MOTION FOR SUPPRESSION OR A *FRANKS* HEARING**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Kedar S. Bhatia
Christy Slavik
Assistant United States Attorneys
    *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .........................................................................................................1

STATEMENT OF FACTS ..............................................................................................................2

LEGAL STANDARD.....................................................................................................................8

DISCUSSION ..............................................................................................................................10

      A.     Kone Cannot Show That There Was Any Material Omission In The Affidavit And He Cannot Show Any Deliberate Falsehood Or Reckless Disregard For The Truth .......................................................................................10

      B.     Kone Cannot Show That Any Alleged Material Omissions Were Necessary To The Probable Cause Finding ..........................................................15

CONCLUSION............................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Franks v. Delaware*,
438 U.S. 154 (1978) ................................................................................. 1, 12, 13, 14, 15, 16

*United States v. Canfield*,
212 F.3d 713 (2d Cir. 2000) ........................................................................................ 9

*United States v. Falso*,
544 F.3d 110 (2d Cir. 2008)(i) .............................................................................. 8-9, 16

*United States v. Lambus,*
897 F.3d 368, 397 (2d Cir. 2018) .................................................................................9

*United States v. Melendez*,
No. 16 Cr. 33 (LTS), 2016 WL 4098556 (S.D.N.Y. July 28, 2016) ....................................... 8

*United States v. Nieves*,
No. 19 Cr. 354 (JSR), 2021 WL 1240472 (S.D.N.Y. Apr. 1, 2021) ................................ 11-12

*United States v. Perez*,
247 F. Supp. 2d 459 (S.D.N.Y. 2003) .................................................................. 10

*United States v. Rajaratnam*,
719 F.3d 139 (2d Cir. 2013) ...................................................................... 9-10, 12

*United States v. Tranquillo*,
606 F. Supp. 2d 370 (S.D.N.Y. 2009) ............................................................. 10, 11

**Statutes**

18 U.S.C. § 1028 ............................................................................................... 3
18 U.S.C. § 1029 ............................................................................................... 3
18 U.S.C. § 1341 ............................................................................................... 3
18 U.S.C. § 1343.............................................................................................. 1, 3
18 U.S.C. § 1344 ............................................................................................... 3
18 U.S.C. § 1349 ....................................................................................... 3, 4, 5, 7, 8
18 U.S.C. § 2312.............................................................................................. 1
18 U.S.C. § 2.................................................................................................. 1

The Government respectfully submits this memorandum of law in opposition to defendant Falikou Kone's motion to suppress evidence obtained pursuant to a search warrant, and/or for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), dated January 28, 2022 (the "Motion"). For the reasons set forth, the Motion should be denied, and no *Franks* hearing is warranted.

## PRELIMINARY STATEMENT

On August 4, 2021, a grand jury returned Indictment S4 19 Cr. 808 charging Kone and defendant Sylvain Gnali Gnahore in six counts. *See* Dkt. No. 252. In connection with a scheme to deposit manipulated versions of checks into bank accounts they controlled in the names of fictitious third parties, Kone and Gnahore are charged with counts of wire fraud, bank fraud, and conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. § 1343, 1344, and 1349 (Counts One through Three). In connection with a scheme to rent vehicles using fake identities and transport those vehicles to the Ivory Coast, Kone is charged with one count of transporting stolen vehicles, in violation of 18 U.S.C. §§ 2312 and 2 (Count Four). In connection with a scheme to fraudulently obtain unemployment benefits using a stolen identity, Kone is charged with wire fraud and aggravated identity theft, in violation of 18 U.S.C. §§ 1343, 1028A, and 2 (Counts Five and Six). Trial for Kone and Gnahore is scheduled for May 2022. *See* Dkt. No. 378.

As part of the Government's long-running investigation into certain fraud schemes involving stolen government checks, on November 14, 2020, the Government obtained a search warrant for Kone's apartment at 505 Concord Avenue in the Bronx, New York (the "Apartment" and the "Warrant," respectively). In applying for the Warrant, the Government submitted an affidavit from Special Agent Nicholas Iorio of the Federal Bureau of Investigation (the "Affidavit"). In the Affidavit, Special Agent Iorio set out probable cause to believe that evidence

of certain frauds would be found inside the Apartment.  The probable cause was based on bank records, subscriber information for IP addresses and telephone numbers, mail cover information, law enforcement surveillance, Kone's relevant criminal history, and Kone's use of a false identity and possession of fraudulent documents during an October 2020 arrest.

Kone does not challenge the accuracy of these facts; nor does he allege that any statement in the Affidavit was false. Rather, Kone alleges that omissions made two discrete statements in the Affidavit deliberately misleading: (i) the Special Agent's identification of Kone in a particular bank surveillance photograph, which Kone alleges was misleading because the Agent did not also disclose that a cooperating witness, Issiaga Sylla, had failed to identify Kone in the same photo; and (ii) statements made by Sylla implicating Kone in identity theft and fraud, which Kone alleges were misleading because the Agent did not adequately disclose the full extent of the Government's concerns about Sylla's credibility. Kone argues that in the absence of these allegedly misleading statements, the Affidavit lacked probable cause. Kone is wrong.

The Special Agent accurately described and qualified his own identification of Kone, and fully disclosed the Government's concerns about Sylla's truthfulness. Simply put, there was no material omission, and Kone falls far short of showing, as he must, that the affiant deliberately or recklessly omitted any material facts. Moreover, even if the Special Agent had included the information that Kone believes should have been included, there were more than enough other facts that provided probable cause to search the Apartment. Accordingly, the defendant's motion for suppression and/or a *Franks* hearing should be denied.

## STATEMENT OF FACTS

Since 2018, law enforcement officers have been investigating a group of individuals conducting overlapping check fraud schemes involving both genuine, stolen checks and fake checks. Among other things, law enforcement officers identified a number of bank accounts that

were opened using false identities, into which manipulated versions of government checks were deposited. As set forth below, account opening documents for some of these fraudulent bank accounts listed the Apartment as the address for the fictitious person in whose name the accounts were opened, and mail addressed to these fake aliases was sent to the Apartment.

On or about November 14, 2020, the Government sought and was granted a warrant to search the Apartment. In support of the warrant application, the Government included a 15-page affidavit from Special Agent Nicholas Iorio of the Federal Bureau of Investigation, *i.e.*, the Affidavit. In the Affidavit, Special Agent Iorio first noted that he had expertise investigating document-intensive fraud cases, executing premises warrants, and warrants for electronic devices. Affidavit ¶ 1. Special Agent Iorio then particularly described the Apartment – referred to in the Affidavit as the "Subject Premises" – and listed the subject offenses for which he believed there was probable cause to find evidence, fruits, and instrumentalities inside the Apartment: 18 U.S.C. § 1028 (identity theft); 18 U.S.C. § 1029 (access device fraud and conspiracy to commit the same); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1344 (bank fraud); and 18 U.S.C. § 1349 (conspiracy to commit mail fraud, wire fraud and bank fraud) (together, the "Subject Offenses).

The Affidavit then set forth facts justifying a search of the Apartment, including many that Kone concedes are entirely unaffected by the alleged omissions:

- The Special Agent stated that two checks worth $36,700 and $19,700 were deposited into a bank account in the name of "Eric Kouman" (the "Kouman Account") but these deposits were later reversed due to a charge back, which, based on the Special Agent's "training and experience and communications with other law enforcement officers," can occur when "there is suspected fraud or

3

insufficient funds in the originating account." Affidavit ¶ 7. Account opening documents for the Kouman Account list the address for the Apartment as the customer address. *Id.* ¶ 8. Likewise, account opening documents for the Kouman Account list a particular phone number (the "Kouman Phone Number"), and subscriber records for the Kouman Phone Number list the Apartment as the subscriber address. *Id.* Records for the Kouman Account show it was accessed by a particular internet protocol ("IP") address. *Id.* Subscriber records for that IP address show that it was used by a customer named "Bintou Obiang" who listed the home address "505 CONCORD AVE, BRONX, NY 10455000," *i.e.*, the building in which the Apartment was located. *Id.* In the months leading up to the search warrant application, mail in the name of "Eric Kouman" and "Bintou Obiang" was sent to the Apartment. *Id.* ¶ 10.

- Special Agent Iorio described incidents from Kone's prior criminal history, including an incident where Kone was stopped by law enforcement officers for a traffic violation less than 0.1 miles from the Apartment and showed officers a fraudulent identification card purportedly from Quebec, Canada, in the name of "Lamine Diarra." *Id.* ¶ 13. Special Agent Iorio also described an incident in which Kone attempted to recover a vehicle that was impounded by the NYPD by using a fake identity in the name of "Lamine Diarra." *Id.* ¶ 12. The vehicle itself was actually registered in the name "Kouman Kareem." In the month before the search warrant application, mail in the name of both "Lamine Diarra" and "Kouman Kareem" was sent to the Apartment. *Id.* ¶ 14.

- Special Agent Iorio described an October 2020 incident, just one month before

4

the warrant application, where Kone was found in a vehicle that was rented using a fraudulent alias and, when stopped, Kone showed a fake Quebec license for "Lamine Diarra." *Id.* ¶¶ 16(a)-(b) & n.6-7. Inside the vehicle, "officers found more than 30 identification cards bearing different names, several bank debit cards bearing no name, hologram stickers, and a card skimming device." *Id.* ¶ 16(d). Special Agent Iorio stated that, based on his training and experience, individuals possessing bulk quantities of fake identity documents and involved in creating these fraudulent identities and access devices frequently store tools and instrumentalities of that work in their homes, *i.e.*, the Apartment. *Id.* ¶ 19. As set forth, mail addressed to "Lamine Diarra" was sent to the Apartment in the month leading up to the warrant application. Special Agent Iorio also noted that Kone was found in possession of two cellphone devices and a laptop computer, which had been recently returned to Kone. *Id.* ¶ 16(e).

- Special Agent Iorio stated that immigration records showed "Lamine Diarra" listing the Apartment as his address; that Kone had also listed the Apartment as his own address on public benefits applications; and that law enforcement officers had recently observed Kone entering and exiting the Apartment. *Id.* ¶ 17.

The Special Agent also provided two discrete facts that Kone now challenges as affected by material omissions. First, the Special Agent stated that bank surveillance showed that "an individual deposited a check purportedly issued by TD Bank into an account opened in the name of "Eric Sasou"" (the "Sasou Account") but the check was not a genuine TD Bank check. *Id.* ¶ 6. The Special Agent went on to say that, "[b]ased on my comparison of the individual depicted in the December 3, 2018 surveillance photograph with law enforcement photographs of Kone, I

5

believe the individual depicted on the surveillance photograph is Kone." *Id.* Kone argues that the Special Agent's identification was incomplete because he omitted the fact that a then-cooperating witness, Issiaga Sylla, gave conflicting statements about whether the person depicted in the same bank surveillance was, in fact, Kone. During two meetings with the Government in early 2020, Sylla was shown a set of three bank surveillance photographs showing an individual – Kone – at an ATM accessing the Sasou Account. The photographs were taken approximately one minute apart. The first and third photographs show the person from the front, and the second photograph shows the person from behind. The first time that Sylla reviewed these photographs, he stated that the person in the photographs "resembled Sekhou Toure [another co-defendant] and Ben," which was one of Kone's aliases and the one he used with Sylla. Sylla also said that "Ben was shorter than the individual in the photographs." During the second meeting with the Government, Sylla was shown the same photographs and stated, after viewing the first photograph, that the individual "looked like Ben." After reviewing the second and third photograph, Sylla indicated that the person "doesn't look like Ben though because its to[o] skinny." Below is one of the bank surveillance photographs showing an individual accessing the Sasou Account and a photograph of Kone from law enforcement records, which Sylla had previously identified as Kone, as noted in the Affidavit, *see* Affidavit ¶ 11(e):




6

*GX 153*                                                                     *3509-15*

Second, Special Agent Iorio's affidavit stated that Sylla told law enforcement officers

that Kone was involved in identity theft schemes and check fraud schemes, and that Sylla had

met Kone outside Kone's apartment on multiple occasions between 2015 and 2017. *Id.* ¶¶ 11(a)-

(c). In August 2019, Sylla identified a photograph of the apartment building at 505 Concord

Avenue as Kone's apartment and identified a photograph of Falikou Kone from law enforcement

records as the person involved in the fraud schemes. *Id.* ¶ 11(d). The Special Agent also gave a

detailed disclosure about Sylla's unsuccessful attempt to cooperate, including the fact that Sylla

was not given a cooperation agreement due to concerns about the accuracy of some information

he provided:

> [Sylla] provided information to law enforcement in the hopes of obtaining leniency,
> specifically including a cooperation agreement. Information provided by [Sylla]
> was generally deemed reliable and much of it was corroborated by independent
> investigation, including bank records corroborating accounts that he used, post
> office sign-in sheets corroborating that he personally picked-up city checks, and
> toll records corroborating communications with co-conspirators. However, [Sylla]
> was not given a cooperation agreement due to concerns about the accuracy of
> certain of his statements regarding his own culpability and certain unauthorized
> contact by [Sylla] with co-conspirators. The charges against [Sylla] are currently
> pending.

*Id.* ¶ 11 n.3.

On November 14, 2020, United States Magistrate Judge Debra Freeman authorized the

requested warrant to search the Apartment. The Warrant permitted law enforcement to seize

"evidence, fruits, and instrumentalities" of the Subject Offenses, which were particularly

described in a list of eight categories, including items, records, or information regarding

"ownership of the Subject Premises"; "credit cards, debit cards, bank accounts, and bank records

related to or used in furtherance of the Subject Offenses"; "checks issued to any individual other

than Falikou Kone or identification documents in names other than Falikou Kone or any other

7

individual who resides in the Subject Premises"; "the creation of identification documents and checks"; "the opening of or maintenance of bank accounts"; "communications with co-conspirators of the Subject Offenses"; "communications with victims of the Subject Offenses"; and "calendar or scheduling information relating to meetings or communications with co-conspirators to the Subject Offenses." Warrant at 2. Where a category's description likely included multiple types of evidence, that category included a brief list of discrete examples of the items to be seized. *See id.*

On November 16, 2020, law enforcement officers searched the Apartment pursuant to the Warrant. Inside the Apartment, officers found evidence relevant to Counts One through Three, including debit cards for bank accounts into which manipulated government checks were deposited and a manipulated government check; Count Four, including the shipping invoices for two vehicles that were stolen and *en route* to be shipped to the Ivory Coast; and Counts Five and Six, including debit cards for bank accounts receiving fraudulently obtained pandemic unemployment benefits.[1]

## LEGAL STANDARD

To suppress evidence from a search warrant on the basis of allegedly false statements or misleading omissions in the affidavit, a defendant must first meet the "heavy burden" required to trigger an "exceedingly rare" *Franks* hearing. *United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7-*8 (S.D.N.Y. July 28, 2016). The heavy burden to obtain such a

---

[1] On or about October 16, 2020, the Government sought and obtained a warrant to search the Apartment. The Government did not execute that warrant and, instead, submitted a new application for a new warrant on or about November 14, 2020, as set forth above. In the Affidavit, Special Agent Iorio noted the fact of the earlier application and warrant, and stated that "[t]his Affidavit includes additional facts learned prior to and after obtaining the October 16 Warrant." Among other things, the November 14 Affidavit includes details of a benefits application submitted by Kone's wife and more particularly describes the Apartment situated within 505 Concord Avenue. *See* Affidavit at 2-3; *id.* at ¶ 19 n.8.

8

hearing requires a defendant to make a "substantial preliminary showing," *United States* v. *Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks* v. *Delaware*, 438 U.S. 154, 155-56 (1978), that (i) there were "inaccuracies or omissions" in the affidavit, (ii) "the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding," and (iii) "the claimed inaccuracies or omissions [were] the result of the affiant's deliberate falsehood or reckless disregard for the truth." *United States* v. *Lambus*, 897 F.3d 368, 397 (2d Cir. 2018) (quotations, alterations, and emphases omitted); *see also id.* at 399 ("[E]ven if the misrepresented or omitted information was material, a motion to suppress is to be denied unless the misrepresentations or omissions were intentional or deliberate, or were made in reckless disregard for the truth."). Because "every decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly . . . , *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *United States v. Awadallah*, 349 F.3d 42, 67-68 (2d Cir. 2003).[2]

Even if a defendant makes a substantial preliminary showing of a deliberate or reckless omission, the defendant is not entitled to a *Franks* hearing unless a reviewing court makes the legal determination that the false statement or omission was "necessary to the [issuing] judge's probable cause finding." *United States* v. *Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (internal citation and quotation marks omitted). Where the defendant alleges there were false statements in the affidavit, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." *Id.*

---

[2] Kone challenges the Affidavit based on two alleged omissions, but he does not argue that the Affidavit contains any falsehoods. *See, e.g.*, Motion at 1-2, 14, 17. Accordingly, this memorandum focuses on the law regarding alleged omissions.

(internal citation and quotation marks omitted). Where the defendant alleges that material information was omitted, a court should "fill[] in the omitted information" and then conduct the same analysis to determine whether the remaining portions of the affidavit support probable cause to issue the warrant. *United States v. Perez*, 247 F. Supp. 2d 459, 474 (S.D.N.Y. 2003). "The ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." *Rajaratnam*, 719 F.3d at 146 (alterations and quotations omitted). Notably, this "ultimate inquiry" is a legal inquiry that the Court can conduct upon its examination of an "excised" and "corrected" affidavit and without a *Franks* hearing. *See, e.g.*, *United States* v. *Tranquillo*, 606 F. Supp. 2d 370, 379 (S.D.N.Y. 2009) (denying motion for *Franks* hearing because "when the allegedly false statements are excised from the warrant affidavit, the remaining portions are sufficient to establish" probable cause).

## DISCUSSION

The defendant falls far short of meeting his "heavy burden" to justify suppression of evidence obtained pursuant to the Warrant or even to trigger a *Franks* hearing. Specifically, the defendant cannot show there were any material omissions in the Affidavit and he cannot show that, even if any omissions existed, they were "necessary to the issuing judge's probable cause . . . finding."

### A.    Kone Cannot Show That There Was Any Material Omission In The Affidavit And He Cannot Show Any Deliberate Falsehood Or Reckless Disregard For The Truth

Kone's motion to suppress suffers from a fatal and simple defect: there were no material omissions in the Affidavit. Kone certainly cannot show that any claimed "omissions [were] the result of the affiant's deliberate falsehood or reckless disregard for the truth."

In his Motion, Kone specifically argues that there were two omissions. First, he argues

10

that, after the Special Agent described his own identification of Kone from the Sasou bank photographs, the Special Agent erred in omitting the fact that Sylla had at different points identified the same photographs as looking like Kone, who Sylla knew as "Ben," and not like Kone. Motion at 14. Second, he argues that the Special Agent omitted the full extent of the Government's concerns about Sylla's credibility. *Id.* at 14-16.

Regarding the first alleged omission, there was no material information left out of the Affidavit because Special Agent Iorio correctly gave only his personal, qualified identification of Kone in bank surveillance photographs. In the Affidavit, the Special Agent stated only that "based on *my* comparison of the individual depicted in the December 3, 2018 surveillance photograph with law enforcement photographs of Kone, *I* believe the individual depicted on the surveillance photograph is Kone." *Id.* ¶ 6 (emphasis added). The Special Agent did not misstate or overstate his familiarity with the defendant, his source of knowledge, or the reliability of his identification. *See United States v. Nieves*, No. 19 Cr. 354 (JSR), 2021 WL 1240472, at *6 (S.D.N.Y. Apr. 1, 2021) ("The Court agrees with Judge Swain's conclusion that Agent Cullen's statement cannot be fairly read to assert that Agent Cullen entertained no doubt that Polanco is the man in the video. Rather, it explicitly disclaims sure knowledge of identity, qualifying the identification of the man as one 'who appear[s] to be . . . Elias Polanco' because his face is 'partly obscured.'").

Nor can Kone show that the omission of Sylla's statements regarding the bank surveillance photographs was the product of a deliberate falsehood or reckless disregard for the truth. The Special Agent did not cherry-pick from Sylla's various statements identifying Kone as the person in the bank surveillance photographs while omitting other statements from Sylla that were equivocal. Rather, the Special Agent simply relied on his own identification of Kone. *See*

11

*Nieves*, 2021 WL 1240472, at *6. The Special Agent was not acting recklessly with his

identification of Kone because a reasonable factfinder could also conclude that the bank

surveillance in question matched the appearance of Kone. *See Rajaratnam*, 719 F.3d at 15 ("To

prove reckless disregard for the truth, the defendants [must] prove that the affiant in fact

entertained serious doubts as to the truth of his allegations.") (quoting *United States v. Whitley*,

249 F.3d 614, 621 (7th Cir. 2001); *see also Nieves*, 2021 WL 1240472 at *6 (citing

*Rajaratnam*).[3]

Regarding the second alleged omission, the Special Agent gave a complete disclosure

regarding the Government's concerns about whether Sylla was truthful in all regards, so there

was no omission, much less a material omission. In the Affidavit, the Special Agent stated that

Sylla "provided information to law enforcement in the hopes of obtaining leniency, specifically

including a cooperation agreement" and that "[i]nformation provided by [Sylla] was generally

deemed reliable and much of it was corroborated by independent investigation . . . ." Affidavit

---

[3] In his Motion, Kone suggests the possibility of misconduct because the Special Agent wrote in his notes from the February 7, 2020, proffer with Sylla that the first photograph of Kone "looks like Ben," then crossed out the words "but not," and then wrote that the second and third photographs of Kone "doesnt look like Ben though because its too skinny." Motion at 6, 14. Kone's speculation about the crossed-out "but not" in the agent's notes is without any merit and gives no basis whatsoever for suppression or even a hearing. First, Kone theorizing about a crossed-out statement in the agent's notes shows a "mere desire to cross-examine," which falls far short of the requirements for conducting an evidentiary hearing. *See Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."). Second, as set forth herein, even if all of the statements about Sylla were excised from the Affidavit entirely, there were many other facts demonstrating probable cause to search the Apartment for evidence of the Subject Offense. Finally, the Government expects that, at a hearing, the evidence would show that the Special Agent initially started writing in his notes that Sylla stated the first photograph looked like Ben but the second and third photographs showed someone too skinny to be him, but the Special Agent then wrote his notes to state those concepts on separate lines. Hence, the Special Agent described Sylla's statements on the first photograph, wrote and then crossed out "but then," and described Sylla's statements about the second and third photographs on a new line. In these notes and others, the Special Agent included statements from Sylla that are both favorable to the defense and unfavorable, so any claim of malfeasance is entirely without merit.

¶ 11 n.3. Significantly, the Special Agent also disclosed that Sylla "was not given a cooperation agreement due to concerns about the accuracy of certain of his statements regarding his own culpability and certain unauthorized contact by [Sylla] with co-conspirators." *Id.*

Kone argues that the Special Agent erred by not fully disclosing the extent of the Government's concerns about Sylla's credibility, and in support of that argument he cites the Government's sentencing submission for Sylla, filed on November 11, 2021. *See* Dkt. No. 319. However, the Special Agent's disclosure was accurate and is entirely consistent with the sentencing submission for Sylla. In that filing, the Government credited Sylla for "aid[ing] the Government in identifying other co-conspirators and giv[ing] the Government additional proof of criminal conduct." Dkt. No. 319 at 6-7. The Government also noted that Sylla "told the Government about conduct by several co-defendants and others in the HRA Check Fraud scheme" and made consensual in-person and telephone recordings against his co-defendants, including Bakayoko, who was charged in large part due to the recordings produced by Sylla. *Id.* at 2. However, the Government noted that Sylla had not been extended a cooperation agreement because he tipped off a co-conspirator to the Government's investigation; he told conflicting stories about how he laundered his *own* profits from the scheme; and he had contact with co-conspirators without immediately notifying law enforcement officers. *Id.* at 2-3. The Government noted that these "significant concerns" resulted in Sylla not receiving a cooperation agreement. *Id.* at 3.

Nothing in the Government' sentencing submission for Sylla undermines Special Agent Iorio's disclosure in the Affidavit that information provided by Sylla was "generally deemed reliable and much of it was corroborated by independent investigation," but "concerns about the accuracy of certain of his statements regarding his own culpability and certain unauthorized

13

contact by [Sylla] with co-conspirators" resulted in him being denied a cooperation agreement. Affidavit ¶ 11 n.3.

Even if the Special Agent had gone further to express doubt about Sylla's credibility, as Kone wishes he had, that would hardly change the weight given to Sylla's statements in the Affidavit, and it certainly would not change the overall mix of information in the Affidavit. The Special Agent's disclosure about Sylla's lack of complete truthfulness and failed cooperation was an unusual, significant disclosure in a search warrant affidavit. The disclosure necessarily dampened the probative value of Sylla's statements in the Affidavit. Sylla's statements also involved dated conduct ranging from 2015 to 2017. Given the disclosure already made, it would have done little to change the weight given to Sylla's statements if the Special Agent simply added more detail about concerns over Sylla's credibility. Furthermore, Sylla's statements were only one small part of a detailed affidavit, and incrementally changing the disclosure by describing additional concerns about Sylla's truthfulness – even if such a change was warranted – would not change a magistrate judge's overall understanding of the proof connecting the Apartment to the Subject Offenses.[4]

For the reasons set forth above, Kone's motion to suppress should be denied because he

---

[4] Kone suggests that Special Agent Iorio "obscured the fact that the last time Sylla saw Kone at all let alone near the apartment was in 2017, approximately three (3) years prior to the initial warrant application." Motion at 5. Far from it, the Special Agent gave a chronological history of Sylla's history with Kone, running from 2015 to 2017. Special Agent Iorio started by describing Sylla's first meeting with Kone in 2015, where Kone charged him $500 per passport for two fake passports. Affidavit ¶ 11(a). Special Agent Iorio then stated that, "[b]etween 2015 and 2017, [Sylla] met with Ben on several occasions to give Ben checks that [Sylla] had stolen from the City of New York so that Ben could alter the checks with higher values and then deposit them. Ben regularly called [Sylla] and asked for more checks. [Sylla] met with Ben outside of Ben's apartment approximately 3-4 times, but Ben never let [Sylla] inside." Id. ¶ 11(b). Special Agent Iorio then described Sylla's contact with Kone in 2017, id. ¶ 11(c), and the fact that Sylla identified a photo of the Apartment and Kone in 2019, id. ¶ 11(d). The agent did not "obscure[]" the timeline of Sylla's contact with Kone, but instead plainly and chronologically described when the relevant events occurred.

cannot show that there were any material omissions in the Affidavit.

**B.      Kone Cannot Show That Any Alleged Material Omissions Were Necessary To The Probable Cause Finding**

Kone's Motion should also be denied because even putting aside the facts he now challenges as incomplete or misleading, the other facts in the Affidavit were more than sufficient to establish probable cause to search the Apartment. Kone cannot show that the "alleged falsehoods or omissions were necessary to the issuing judge's probable cause . . . finding."

Based on the alleged omissions described above, Kone argues that the Court should disregard Paragraph 6 of the Affidavit (describing the Sasou check deposit) and Paragraph 11 (describing Sylla's statements about Kone). Motion at 17 ("The critical issue before this Court, therefore, is whether the November 14, 2020 affidavit, after inserting the omitted information into it or deleting paragraphs 6, 11 and fn. 3 therein, sets forth a sufficient factual nexus to link Kone's alleged criminal activity to the apartment to be searched."). There are many facts set forth in the Affidavit apart from these two paragraphs that demonstrate probable cause to search the Apartment. Special Agent Iorio noted that there were two fraudulent checks deposited into a bank account in the name of "Eric Kouman," and the account opening documents for that account list the address to the Apartment and a phone number that was itself subscribed to with the address of the Apartment. Affidavit ¶¶ 7-9. Special Agent Iorio included Kone's prior criminal history, including an incident where he was stopped by law enforcement officers for a traffic violation less than 0.1 miles from the Apartment and showed officers a fraudulent identification card. *Id.* ¶ 13. Special Agent Iorio cited mail being delivered to the Apartment in the name of several aliases tied to the fraud schemes being investigated. *Id.* ¶¶ 10, 14. Special Agent Iorio's affidavit described law enforcement surveillance observing Kone entering and exiting the Apartment. *Id.* ¶ 15. Finally, Special Agent Iorio described the October 2020 incident

15

where Kone was found in a vehicle with a large volume of materials for creating fraudulent identities and access devices and stated that, based on his training and experience, those involved in creating the fraudulent identities and access devices frequently store tools and instrumentalities of that work in their homes, *i.e.*, the Apartment. *Id.* ¶ 19. During the October 2020 car stop, Kone gave a fake identification card bearing the name "Lamine Diarra," which is the same fake alias Kone used in other situation and which was listed on mail going to the Apartment. *Id.* ¶ 12, 13, 14(b), 16(c), 17, 18.

Several of the facts listed above in isolation would establish that there was "a fair probability that contraband or evidence of a crime will be found in" the Apartment. *Falso*, 544 F.3d at 117 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Together, they provide ample basis to find probable cause apart from the provisions that Kone now challenges. Indeed, the critical question for a magistrate judge is whether there are facts to establish probable cause that the *premises* would contain evidence of a crime, which is separate from whether *Falikou Kone* had committed a crime. There were facts tying the Apartment to the Eric Kouman account, the phone number used to open the bank account, and the online access to the bank account. Affidavit ¶¶ 7-9, 18. There were facts tying the fake alias "Lamine Diarra" – which was presented to law enforcement officers on a fake vehicle title and during two near-in-time traffic stops – to the Apartment based on immigration records, mail, and a nearby traffic stop. *Id.* ¶¶ 13, 17. There were facts showing that mail addressed to the aliases "Eric Kouman," "Bintou Obiang," "Kareem Kouman," and "Lamine Diarra" – each tied to fraud – was recently sent to the Apartment. *Id.* ¶¶ 10, 14, 18. Indeed, an article of mail was sent from the Apartment listing "Eric Kouman" in the return address and the same article of mail was returned to the Apartment as undeliverable. *Id.* ¶ 10(a). Even excising the allegedly affected paragraphs, the remaining facts

16

far exceed the showing necessary to establish probable cause to search the Apartment for evidence of identity theft, access device fraud, wire fraud, bank fraud, and conspiracy, *i.e.*, the Subject Offenses.

Accordingly, Kone cannot show that the alleged omissions, even if material and deliberate, were necessary to the magistrate judge's probable cause finding. For this reason too, Kone's motion fails.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion for a suppression and/or a *Franks* hearing.

Dated: New York, New York
February 25, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: ___/s/_____
Kedar S. Bhatia
Christy Slavik
Assistant United States Attorney
Tel.: (212) 637-2465

17