USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/11/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
   UNITED STATES OF AMERICA,             :
                                                        :       19-CR-808 (VEC)
           -against-                       :
                                                        :       OPINION & ORDER
   FALIKOU KONE,                             :
                                                        :
                                     Defendant.    :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Defendant Falikou Kone has been indicted for conspiracy, wire fraud, bank fraud, transportation of stolen vehicles, and identity theft. *See* Superseding Indictment (S4) (Dkt. 252).[1] On December 10, 2021, three days before jury selection was to commence, the Government disclosed information that it was required to produce pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Order (Dkt. 350). On December 13, 2021, this Court granted Mr. Kone's request for an adjournment. *Id.* On January 28, 2022, Mr. Kone moved to suppress evidence seized pursuant to a search warrant, or alternatively, for a *Franks* hearing. *See* Mem. of Law (Dkt. 403-1). For the reasons discussed below, Defendant's motion is DENIED.

## BACKGROUND

### I. The Search Warrant

The investigation into Defendant Kone initially stemmed from an alleged scheme to deposit manipulated checks and withdraw funds from various bank accounts that had been opened in the names of fictitious third parties. On August 4, 2021, a grand jury returned a six-count indictment against Mr. Kone. Superseding Indictment (S4). The grand jury charged Mr.

---

[1] Mr. Kone was charged with multiple co-defendants. All have pled guilty or been previously tried other than Mr. Kone and Sylvain Ghanore. Jury selection and trial for Kone and Ghanore are scheduled to begin on June 6, 2022.

Kone with wire fraud, bank fraud, and conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. §§ 1343, 1344, and 1349 (Counts One through Three); one count of transporting stolen vehicles in connection with an alleged scheme to steal rental vehicles obtained with fake identities and transport those vehicles to the Ivory Coast in violation of 18 U.S.C. § 2312 (Count Four); and aggravated identity theft, in violation of 18 U.S.C. §§ 1343, 1028A  (Counts Five and Six).  *See id.*; *see also* Gov. Opp. at 1 (Dkt. 405).

As part of its investigation, on November 14, 2020, the Government obtained a search warrant for Mr. Kone's apartment at 505 Concord Ave, Apartment 1, Bronx, New York (the "Apartment").[2]  *See* Mem. of Law Ex. C.  In support of the warrant application, Special Agent Nicholas Iorio (the "Affiant") submitted a 15-page affidavit.  *See id.* (hereinafter, the "Affidavit").  The Affidavit particularly described the "Subject Premises," *i.e.*, the Apartment, and the type of evidence to be searched for and seized.  *See id.* at 2–3.  The Affidavit further described the bases for the Affiant's belief that evidence of Mr. Kone's "involve[ment] in check fraud, access device fraud, and identify theft schemes" would be found in the Apartment.  *Id.*  The Affidavit relied on bank records, subscriber information for IP addresses and telephone numbers, mail cover information, law enforcement surveillance, Mr. Kone's relevant criminal history, and Mr. Kone's use of a false identity and possession of fraudulent documents during an

---

[2]  For reasons unknown, the Government first obtained, but never executed, a search warrant for the Apartment on October 16, 2020.  *See* Mem. of Law at 1 n.1; Gov. Opp. at 8 n.1.  In any event, only the November affidavit is at issue.

October 2020 arrest to establish probable cause. Gov. Opp. at 2. The Affidavit also relied on statements from an alleged co-conspirator denominated as "CS-1."

### II. Mr. Kone's Motion to Suppress

The instant motion stems from the Government's disclosure, on the eve of a previously scheduled trial, an investigator's handwritten notes from interviews with Mr. Isiagga Sylla, the cooperating witness identified as "CS-1" in the Affidavit. *See* Mem. of Law Ex. D; *see also* Gov. Opp. at 6.[3] According to the Government, Sylla was shown three surveillance photos of Mr. Kone that were taken within moments of each other. Gov. Opp. at 6. Sylla positively identified Mr. Kone as the person depicted in one of the photos, but claimed that the other two photographs did not resemble Mr. Kone. *Id.* Upon receipt of this material, Mr. Kone moved the Court to sanction the Government for the late disclosure by either dismissing the indictment against Mr. Kone or adjourning the trial. *See* Order (Dkt 350). This Court denied the motion to dismiss but granted an adjournment. *See id.*

On January 28, 2022, Mr. Kone moved to suppress the evidence seized from the Apartment pursuant to the November 14, 2020 search warrant, or alternatively, for a *Franks* hearing (the "Motion"). *See* Mem. of Law. Mr. Kone claims that he is entitled to a *Franks* hearing to determine whether the evidence seized pursuant to the search warrant should be suppressed. The Government opposes the Motion. *See generally* Gov. Opp.

According to Mr. Kone, "some of the[] charges" he faces "were added because of evidence seized pursuant to a search warrant" that relies on "information provided by Sylla." *See* Mem. of Law at 3. Mr. Kone argues that the search warrant is defective because the

---

[3] Sylla pled guilty to participating in the alleged scheme with Mr. Kone to deposit manipulated checks and withdraw cash from various bank accounts. Earlier in the investigation, however, Sylla had offered to cooperate with the Government. In that posture, he provided the Government with information pertaining to Mr. Kone. Ultimately, the Government decided not to enter into a cooperation agreement with him.

3

Government intentionally or recklessly omitted material information about Sylla that renders misleading certain statements in the Affidavit, and that the "misrepresentation [] was essential to the probable cause finding." Mem. of Law at 2.

Specifically, Mr. Kone argues that material omissions about Sylla rendered paragraphs 6, 11, and footnote 3 false or misleading, and that those very paragraphs were required for the probable cause finding. *See* Mem. of Law at 17. Mr. Kone alternatively argues that if the Government had included the information bearing on Sylla's reliability and that Sylla had failed to positively identify Mr. Kone from the bank surveillance photographs, then the Affidavit would not have established probable cause to search the Apartment. *Id.* at 14–16.

For the reasons discussed below, Mr. Kone's motion is denied. This ruling should not, however, be read by the prosecution as the Court condoning its conduct in this case. The Court agrees with Mr. Kone that the Government should have been more forthcoming in the Affidavit about the Government's concerns regarding Sylla's credibility. And, as the Court has stated previously, the prosecution should have turned over all of this information to Mr. Kone well before the eve of trial.

## DISCUSSION

The Fourth Amendment prohibits unreasonable searches and seizures and requires that warrants be supported by probable cause. U.S. Const. amend. IV. "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause exists if the information in the warrant's supporting affidavit supplies "a

fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting *Gates*, 462 U.S. at 238).

A defendant may challenge a search warrant when the supporting affidavit contains deliberately or recklessly false or misleading information. *Id.* at 717 (citing *Franks v. Delaware*, 438 U.S. 154, 164–72 (1978)). A defendant is entitled to a hearing to determine whether a warrant affidavit "must be voided and the fruits of the search excluded" if the "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. In other words, even if a defendant makes a substantial preliminary showing of a deliberate or reckless omission, the defendant is not entitled to a *Franks* hearing if the false statement or omission was not "necessary to the [issuing] judge's probable cause finding." *Canfield*, 212 F.3d at 718 (citation omitted).

When the defendant alleges there were false statements in the affidavit, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." *Id.* (citation omitted). Where the defendant alleges that material information was omitted, a court should "fill[] in the omitted information" and then conduct the same analysis to determine whether the remaining portions of the affidavit support probable cause to issue the warrant. *United States v. Perez*, 247 F. Supp. 2d 459, 474 (S.D.N.Y. 2003). "The ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful

5

information sufficient to support a finding of probable cause." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (alterations and quotations omitted).

Here, Mr. Kone alleges that the Government deliberately or recklessly omitted information bearing on Sylla's credibility, and Sylla's inability to positively identify Mr. Kone in the bank surveillance photographs. Mem. of Law at 14–15. Mr. Kone argues that, "after inserting the omitted information into [the Affidavit] or deleting paragraphs 6, 11 and fn. 3 therein," the remaining portions of the Affidavit lack "a sufficient factual nexus to link Kone's alleged criminal activity to the apartment to be searched."[4] Mem. of Law at 17. The Court disagrees. Setting aside the paragraphs Mr. Kone identifies as problematic, the Affidavit nonetheless provides adequate facts to support the finding that there was probable cause to search the Apartment. In other words, even if Mr. Kone could establish intent or recklessness, paragraphs 6, 11, and footnote 3 were not necessary for the probable cause finding.[5]

The Affidavit describes an attempt in January 2019 to deposit checks worth $36,700 and $19,700 within days of each other into a single account in the name of "Eric Kouman." Affidavit ¶ 7. The deposits were reversed, which often occurs when "there is suspected fraud or insufficient funds in the originating account." *Id.* The address listed on the account, and that of the IP address used to access the account, matched that of the Apartment, which was described in

---

[4] Paragraph 6 provides that bank surveillance photographs of an individual accessing an account bearing the name "Eric Sasou" depicted Mr. Kone, based on the Affiant's comparison of the surveillance photographs to law enforcement photographs of Mr. Kone. Paragraph 11 details a series of statements made by Sylla, or "CS-1," during proffer sessions that described his relationship with an individual he knew as "Ben," and whose apartment he had visited to manipulate checks in 2017. Paragraph 11 also describes how Sylla positively identified Mr. Kone as "Ben" in law enforcement photos. Footnote 3 states that Sylla agreed to cooperate in exchange for leniency, that the information he provided "was generally deemed reliable and much of it was corroborated by independent investigation," but that the Government had ultimately not entered into a cooperation agreement with him due to concerns about the accuracy of information he provided, particularly with respect to his own culpability.

[5] Nor do the alleged omissions from the Affidavit "cast doubt on the existence of probable cause." *See* Reply Br. at 6–7 (quoting *United States v. Marin-Buitrago*, 734 F.2d 889, 895 (2d Cir. 1984)).

6

detail in the Affidavit.  *Id.* ¶ 8; *see also id.* at n.1.  The IP address that accessed the Kouman account was registered to a user named "Bintou Obiang."  *Id.* ¶ 8.  Mail addressed to Eric Kouman and Bintou Obiang at 505 Concord Ave — i.e., the Apartment — was delivered to the Apartment in September and October 2020.  *Id.* ¶ 10.

The Affidavit goes on to describe a September 13, 2019 incident in which an individual using the alias "Lamine Diarra" attempted to recover a seized vehicle from a New York Police Department precinct.  *Id.* ¶ 12.  The individual, which the Affidavit asserts was Mr. Kone, presented a false title that showed the vehicle was owned by "Lamine Diarra," when, in fact, the vehicle was actually titled to "Kouman Kareem."  *Id.*  Mr. Kone was charged "[o]n or about the same day" with possession of a forged instrument.  *Id.*  Fingerprint records of the New York Police Department confirmed that the person who identified himself at the precinct as Lamine Diarra was, in fact, Mr. Kone.  *See id.* n.4.  Mail addressed to "Lamine Diarra" and "Kareem Kouman" at 505 Concord Ave was delivered to the Apartment in October of 2020, *id.* ¶ 14, and immigration records for "Lamine Diarra" list the Apartment as that individual's residence, *id.* ¶ 17.

Most fatal to Mr. Kone's argument that the Affidavit lacked probable cause if the information from Sylla is excluded is Mr. Kone's arrest on October 2, 2020.  The Affidavit describes how law enforcement officers stopped Mr. Kone in the Bronx for driving a vehicle that had been reported stolen.  *Id.* ¶ 16.  When asked for identification, Mr. Kone provided a driver's license for "Lamine Diarra."  *Id.*  When the vehicle he was driving was searched, the police

found "more than 30 identification cards bearing different names, several bank debit cards bearing no name, hologram stickers, and a card skimming device." *Id.*

Mr. Kone argues that the Affiant "provides no reason to believe that . . . additional evidence of bank fraud, wire fraud, identity theft, or access device fraud would be located in the [A]partment" after the October 2, 2020 arrest. Mem. of Law at 17–18. The Court disagrees. In addition to seizing hologram stickers, a card skimming device, and nameless credit cards from the car he was driving, officers seized "two cellphone devices and a laptop computer," which were returned to Mr. Kone days later. Affidavit ¶ 16. It is certainly conceivable that additional evidence, including the cellphones and laptop returned to Mr. Kone after his arrest, would be found at the apartment listed as "Lamine Diarra's" residence. Additionally, Affiant's "training and experience" amply supported his belief "that individuals who are engaged in access device fraud, and the creation of, and trafficking in, [] fraudulent and counterfeit access devices, and other fraudulent identity documents, frequently store materials related to their criminal activity, including, but not limited to, device-making equipment, uncoded credit/debit cards, and the personal identifying information of other people, in their residences." *Id.* ¶ 19.

Mr. Kone insists that "the sole allegation which tied Kone's alleged crimes to the [A]partment was the stale assertion made by Sylla that in 2017, Sylla brought checks to be altered by Kone to the [A]partment, and Kone received them there but never let Sylla inside." Mem. of Law at 18. Mr. Kone also insists that "[o]nly through Sylla is there a direct nexus between Kone . . . and the apartment to be searched." *Id.* at 16. But Mr. Kone ignores the barrage of other evidence, separate and apart from Sylla, that showed that Mr. Kone was associated with the Apartment. Not only does the Affidavit connect the aliases described above to the Apartment — and those aliases to Mr. Kone — but Mr. Kone was also observed staying

8

overnight at the Apartment in July 2020, and on multiple consecutive occasions in October 2020, mere weeks before the search warrant was executed.[6]  Affidavit ¶ 19 n.8.

In the aggregate, even without the information from Sylla, the Affidavit positively links Mr. Kone to several aliases that are connected to the Apartment by connecting him to those aliases through bank records, mailings, immigration records, law enforcement records, and other documentation, all of which demonstrates that there was probable cause to believe there was a connection between Mr. Kone and the Apartment, and that evidence of his criminal conduct would be found there.  Having reviewed the Affidavit without considering the contents in paragraphs 6, 11, and footnote 3, the Court finds that the remaining facts amply connect Mr. Kone's alleged fraudulent activity to the Apartment.

---

[6]     Mr. Kone argues that the nexus between Mr. Kone's alleged criminal activity and the Apartment was insufficient, in part, because Mr. Kone "was not living in the apartment between late August 2020 and November 14, 2020."  Mem. of Law at 17 ("We know from the affidavit that Kone was not living in the apartment between late August 2020 and November 14, 2020 because of his wife's August 31, 2020 benefits application listing him as a 'parent not in household,' Kone's assertion on October 2, 2020 that his wife kicked him out of the house coupled with the clothes in his car, and his sporadic visits to the building in which the apartment was located.").  Of course, if Mr. Kone were *not* residing at the apartment at the time of the search, then he might not have standing to challenge the search at all.  *See Rakas v. Ill.*, 439 U.S. 128, 134 (1978).  Nonetheless, the question put to the magistrate judge was only whether there was probable cause to believe that a search of the Apartment in which Kone appeared to be living, at least part-time, would yield evidence of Mr. Kone's criminal conduct.  The Affidavit did not need Sylla's statements to demonstrate probable cause to believe that evidence of Mr. Kone's alleged criminal activity would be found in the Apartment.

## CONCLUSION

For the reasons set forth above, Mr. Kone's motion to suppress or, in the alternative, for a *Franks* hearing, is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at docket entry 403.

**SO ORDERED.**

**Date:** **May 11, 2022**
**New York, NY**

                          **VALERIE CAPRONI**
                          **United States District Judge**